[Civ. No. 7070.   Third Dist.   Mar. 21, 1945.]

SARAH E. McKELLAR, Appellant, v. HARRIET E. PENDERGAST et al., Respondents.

Irvin C. Ford and Van Dyke & Harris for Appellant.

Bronson, Bronson & McKinnon for Respondents.

PEEK, J.—Appellant Sarah McKellar, by her action, sought to recover from respondents Pendergast, as owners, and respondent Randlett, as manager of an apartment house in the city of Sacramento, damages for personal injuries. The jury returned a verdict in her favor. However, respondents' motion for a judgment notwithstanding the verdict was granted and judgment for defendants was entered accordingly.

By her complaint she alleged that at the time of the injury she was a tenant in defendants' apartment house; that defen-

dants carelessly and negligently permitted an oily substance to remain on the lobby floor, and that as a proximate result of such negligence she fell and suffered serious injuries. Defendants' answer admitted the ownership of the premises and that plaintiff was a tenant, but specifically denied any negligence in the maintenance of the lobby floor, and as an affirmative defense alleged that plaintiff was contributorily negligent.

It appears that at the trial plaintiff's case was predicated upon the theory that defendants' negligence consisted in collecting and carrying out the garbage from the individual apartments without sufficient care and caution to prevent dripping; that by reason of such negligence, garbage dripped upon the lobby floor, and it was that garbage upon which plaintiff slipped and sustained injuries. All of which were directly in issue and essential to plaintiff's case.

The very comprehensive memorandum opinion of the trial judge discloses that defendants' motion for a judgment notwithstanding the verdict of the jury was granted upon the sole ground that said verdict was not supported by the evidence.

On appeal it is plaintiff's contention that the evidence introduced by her when viewed in the most favorable light, was entirely sufficient to sustain the verdict of the jury under either or both of two propositions. (1) That either defendants were negligent by having carelessly caused the condition of the lobby floor or (2) that they failed to exercise that degree of care in the maintenance of the premises that the law exacted of them, and carelessly failed to remedy a dangerous condition created by others after having an adequate opportunity to do so.

The power of a trial court to set aside a verdict of a jury and enter a contrary judgment is the same as its power to grant a nonsuit. (Code Civ. Proc., § 629; *Neel* v. *Mannings, Inc.*, 19 Cal.2d 647 [122 P.2d 576].) Therefore a motion for judgment notwithstanding a verdict of the jury may properly be granted "only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff." (*Card* v. *Boms*, 210 Cal. 200 [291 P. 190]; *Anthony* v. *Hob-*

*bie*, 25 Cal.2d 814 [155 P.2d 826] ; *Megee* v. *Fasulis*, 57 Cal. App.2d 275 [134 P.2d 815].)

In light of such rule the evidence which plaintiff must rely upon in support of her contention may be epitomized as follows:

Defendant Randlett, called as an adverse witness under section 2055 of the Code of Civil Procedure, testified that the apartment house contained 36 apartments, housing approximately 60 people; that the floor of the lobby was inlaid linoleum of variegated colors; that in going to and from plaintiff's apartment on the second floor it is necessary to walk across said lobby; that janitor service was provided for the guests; that the janitor employed at the time of plaintiff's accident had been there but a short time; that one of his duties was to clean the lobby under her supervision; that a further duty of the janitor was to pick up from each apartment daily the accumulated garbage of the previous day; that the tenants put the garbage in paper bags which were provided by the landlord and placed the bags in cubby-holes opening from the kitchen of each apartment into the hallway; that the sacks of garbage were placed in a wicker basket by the janitor and carried to an incinerator; that in order to get to the incinerator it was necessary to carry the garbage so collected across the lobby floor; that on the floor near where plaintiff fell she saw a few yellow spots but she did not know what they were, that it might have been the drippings of mayonnaise or salad oil; that on the morning of the accident the floor of the lobby had been dusted thoroughly by the janitor preparatory to waxing; that he concluded his dusting at 8 o'clock, at which time the floor was clean; that several times thereafter but prior to the time he carried out the garbage, she observed the floor to be clean. Her testimony regarding the time she last saw the janitor in relation to the time the plaintiff fell is somewhat confused. She first testified that she did not notice what time it was when she saw him but that it must have been between 7:30 and 8 o'clock, and that it must have been just a few minutes before plaintiff fell; that she did not have time to examine the floor after the janitor collected the garbage. Later she testified, in response to questions by the trial judge, that she saw the janitor with the empty basket about 8:30 o'clock, and that plaintiff fell between 9 and 10 o'clock; that the spot where plaintiff fell was in a direct line with the stairway and where the janitor

would have to cross in carrying out the garbage.

Mrs. Edith Davis, called as a witness for plaintiff, testified that she had lived at the apartment for several years; that in the color of the linoleum were shades of cream and yellow to rusty; that when she went to the assistance of plaintiff she noticed a substance on plaintiff's heel—"something of a creamy—very pale—an oily, creamy substance" on the floor, covering an area about the size of the palm of one's hand.

Mrs. Maude A. Scott, a niece of the plaintiff, and a witness in her behalf, testified that she was called by Mrs. Davis, and upon entering the lobby was informed by the manager that plaintiff had fallen on some oil on the floor, that it looked like mayonnaise or cream or something of that order.

Plaintiff's testimony was merely that after taking three steps from the bottom of the stairs her feet slipped and she fell; that the manager mopped up the floor around her feet but that she did not know upon what she had slipped.

The burden of proof was upon plaintiff to prove the existence of every essential fact upon which she relied, which in the present case means, primarily, proof of the causal connection between the alleged negligence and the resulting injury. Applying this rule to the evidence reviewed it is readily apparent that such evidence presented no basis for the conclusion of the jury other than mere speculation. Or, stated in another fashion, it is no more speculative to presume that the oily substance was dropped by another than it is to speculate that the janitor dropped it. In either event the conclusion reached can be only the result of speculation, and therefore was not sufficient to support the verdict of the jury. (*Reese* v. *Smith,* 9 Cal.2d 324 [70 P.2d 933].) Nor can a plaintiff recover where the facts go no further than to establish a possibility that defendant's negligence was the proximate cause of the injury. (*Wilbur* v. *Emergency Hospital Assn.,* 27 Cal.App. 751 [151 P. 155].)

Defendants as operators of the apartment house were not insurers of plaintiff's safety. (*Sylvia* v. *Mellema,* 17 Cal. App.2d 728 [62 P.2d 746].) Therefore mere proof that a substance on the floor caused plaintiff to slip and suffer injuries is not sufficient.

As stated in *Gold* v. *Arizona Realty etc. Co.,* 12 Cal.App. 2d 676 [55 P.2d 1254]:

"It was not shown that the 'substance' which caused plain-

tiff's fall had been on the stairway any length of time or that it had been left there by an agent of defendant (*Marple* v. *Manspeaker*, 88 Cal.App. 682 [263 P. 1022].) To determine how the 'substance' became attached to plaintiff's shoe one must enter the field of conjecture. It may have been picked up from the street as she entered the apartment house or it may have been dropped on the stairway by someone not in defendant's employ." (See, also, *Marple* v. *Manspeaker*, 88 Cal.App. 682 [263 P. 1022].)

Plaintiff argues, however, that the law has been relaxed particularly in a recent case decided by this court (*Megee* v. *Fasulis*, 57 Cal.App.2d 275 [134 P.2d 815]), and a subsequent case involving the same parties, reported in 65 Cal. App.2d 94 [150 P.2d 281].

In the first Megee case this court stated "there was evidence from which the jury had a right to conclude that respondent had so operated the shooting device and so maintained the premises that discharged cartridges had fallen upon the stairway and that appellant had slipped on one of them and had fallen. . . . Our conclusion is that there is sufficient evidence in the record to support a finding that appellant's injuries were the proximate result of the negligence of respondent in maintaining said premises and stairway, and that appellant was not guilty of contributory negligence."

In other words, the evidence in the Megee case was sufficient to show that the negligence of the owner of the premises in allowing empty cartridge shells to fall on the stairway was in the nature of a continuing act of negligence, and in fact had caused the fall of one person other than plaintiff therein, and which evidence, although circumstantial, was sufficient to establish the chain of causation from which the jury might logically draw the inference that the plaintiff's fall was the result of slipping upon one of the empty shells.

Although, as stated by the trial judge in his memorandum opinion herein, "A plaintiff is not bound to negative every other conceivable theory or hypothesis which ingenuity may invent to account for his injury," yet, nevertheless, the burden of proof was upon her to show the causal connection between the alleged negligence and the injury.

In the Megee case, *supra*, the defendant was found to be negligent in allowing the empty shells to be on the stairway. In the present case the source of the substance on the floor

is unknown. All that the record herein discloses is that some time after the janitor carried a wicker basket of garbage across the lobby floor a tenant slipped on some oily substance and was injured.

The second phase of plaintiff's appeal is that if someone other than the janitor dropped the substance upon which she slipped, defendants were negligent in not remedying such condition, and therefore the judgment must be reversed. The record discloses no evidence in support of such contention. An owner of premises is only responsible for not removing a dangerous foreign substance brought upon the premises by others if the owner actually knew of the presence of such substance, or if it had been present for a sufficient length of time that he should have known of its presence. (*Crawford* v. *Pacific States S. & L. Co.*, 22 Cal.App.2d 448 [71 P.2d 333]; *Touhy* v. *Owl Drug Co.*, 6 Cal.App.2d 64, 66 [44 P.2d 405]; 45 C.J. 837.)

For the foregoing reasons the judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 17, 1945. Gibson, C. J., and Carter, J., voted for a hearing.