[Civ. No. 15455.   First Dist., Div. Two.·   Aug. 4, 1953.]

VAUDINE SANDERS et al., Appellants, v. MacFARLANE'S CANDIES (a Corporation), Respondent.

Bohnett, Hill, Cottrell & Bohnett for Appellants.

Campbell, Hayes & Custer and W. R. Dunn for Respondent.

NOURSE, P. J.—Plaintiffs, husband and wife, brought action for serious personal injuries suffered by the wife as the result of a fall in defendant's store in San Jose. Plaintiff in singular will hereafter refer to the wife. The cause was tried before a jury. Plaintiffs appeal from judgment of nonsuit entered at the close of their case. The only question presented is whether their evidence was sufficient to go to the jury.

Plaintiff's evidence supporting the action was in substance as follows:

Before the accident plaintiff was a dancing teacher, teaching ballet, tap, acrobatic dancing, et cetera. In the afternoon of May 16, 1949, she entered the store with her mother. She observed the floor. It was polished. ". . . the floor looked very shiny and pretty, and I remarked that the—the floor looked very lovely. Looks almost oily, I said, it was so shiny." The floor was of a material similar to linoleum or asphalt tile. She asked a salesgirl for a certain kind of candy, of which she did not know the name but which she described. When the girl went to the rear of the store to get it, plaintiff followed

her at the outside of the counter, walking along the middle of a wide aisleway to see whether the girl was getting the particular kind of candy plaintiff wanted. The floor appeared clean and she had no difficulty in walking on it. As a dancing teacher and dancer, she was accustomed to polished floors. When she had walked approximately half the depth of the store, where the salesgirl was getting the candy from behind the counter plaintiff turned and took a couple of steps toward the counter to see what kind of candy the girl was getting. When plaintiff was very close to the counter, right in front of it, both her feet at once went out from under her, "both feet at once just zipped" and she landed on the floor on her left hip, facing the counter. (She was later found to have fractured the neck of her left femur in the fall.) She was momentarily dazed but turned around pushing with her hands on the floor until she sat with her back leaning against the counter. She sat there a few minutes trying to regain her composure. When she was sitting there she put her hands down on each side of her to hold herself and as she did so her "hands sort of stuck to the floor" right next to the counter. It was apparently very waxy, sticky, and she could feel it on her fingers. A saleslady came from behind the counter and took her name and address and asked whether she was hurt. While the saleslady was with her she heard a thump; she looked and saw to the front of the store a girl on the floor. The saleslady also looked up and said, "My goodness. There goes another one." Plaintiff did not remember details of the girl's fall; she herself was still in a daze on the floor. When she sat there she did not see any foreign objects on the floor. She had not turned her ankle when she fell. She was wearing very stable sport shoes.

The manager of defendant's San Jose store testified under section 2055, Code of Civil Procedure, that she did not know whether prior to the accident floor wax had been applied to the floor of the store. The janitor came in at night and took care of that. She did not know what was done with the floor. The janitor came once a week on the week end. She believed he used to come in Sunday nights. Supplies for the janitor were kept in back of the store. Among them was liquid wax in gallon bottles and a mop. There was liquid wax in the storeroom at the closing of the store on Saturday evening preceding the accident (which happened on a Monday). She did not check on Monday to see whether any wax had been used.

The janitor, who at the time of the accident worked for defendant, left for the East with his family more than a year before the trial. (He was not heard as a witness.)

Appellant contends that from the above evidence a jury was entitled to draw the inferences that defendant's janitor waxed the floor of the store during the week end preceding the accident and left excess wax near the base of the counter and that plaintiff slipped because of that surplus wax; therefore the case should have gone to the jury. Respondent contends that the evidence did not permit any inference that it was the janitor who put any wax or a surplus of wax on the floor, or that he did so negligently, or that defendant had or should have had knowledge of the presence of the wax.

The position of appellant must be sustained. The parties agree and the rule is too well settled to require citation of authority that if inferences which can reasonably and fairly be deduced from the evidence can sustain the allegations of plaintiff it is error to grant a nonsuit. "Whether a particular inference can be drawn from certain evidence is a question of law, but whether the inference shall be drawn, in any given case, is a question of fact for the jury." (*Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868].) An inference cannot be based on mere possibilities; it has been held that it must be based on probabilities. (32 C.J.S. 1132, 1133; *Gardner* v. *Seymour*, 27 Wn.2d 802 [180 P.2d 564, 569]; *Kentwood Lbr. Co.* v. *Illinois Cent. R. Co.*, 65 F.2d 663, 665.) This accords with the general principle, enunciated more than once by this court, that in civil cases the rule of decision is a rule of probability only. (*Spolter* v. *Four-Wheel Brake Serv. Co.*, 99 Cal.App.2d 690, 693 [222 P.2d 307]; *Wirz* v. *Wirz*, 96 Cal.App.2d 171, 175 [214 P.2d 839, 15 A.L.R.2d 1129].) "It is not necessary, in order to establish a theory by circumstantial evidence, that the facts be such and so related to each other that such theory is the *only* conclusion that can fairly or reasonably be drawn therefrom . . ." (*Katenkamp* v. *Union Realty Co.*, 36 Cal.App.2d 602, 617 [98 P.2d 239].) The plaintiff relying on circumstantial evidence does not have to exclude the possibility of every other reasonable inference possibly derivable from the facts proved. (*Vaccarezza* v. *Sanguinetti*, 71 Cal.App.2d 687, 692 [163 P.2d 470]; *Spolter* v. *Four-Wheel Brake Serv. Co., supra,* at ·p. 694.)

It is true, as urged by respondent, that no inference of negligence arises upon proof of only a fall on defendant's

floor. (*Vaughn* v. *Montgomery Ward & Co.*, 95 Cal.App.2d 553, 556 [213 P.2d 417].) ■ However here there is moreover evidence that the victim was a dancing teacher accustomed to polished floors and wearing very stable sport shoes; that she had no difficulty walking over the floor of the store which was conspicuously shiny and polished, but that when she stood very close to the counter her feet suddenly slipped from under her; that near to the counter the floor was so sticky and waxy that she could feel the wax on her hands and that they to some extent stuck to the floor; that she did not see any foreign object on which she could have slipped and that the fall was not caused by her turning an ankle. From these facts a jury could conclude that it was probable that plaintiff's fall was caused by slipping on excess wax near the base of the counter. Moreover from the conspicuously shiny and polished look of the floor, together with the facts that the accident happened on a Monday whereas the janitor of defendant used to take care of the floor on the week end, probably on Sunday evening, and that the janitor was supplied by defendant with liquid wax and a mop, the jury could conclude that it was probable that defendant's janitor had left the surplus wax on which plaintiff slipped when he polished the floor during the preceding week end. The possibility suggested by respondent, that the floor might have been waxed by an independent contractor making a special profession of such work finds no support whatever in the evidence and under the rules previously stated need not be excluded by plaintiff's evidence to make a prima facie case.

■ Storekeepers are under duty to use ordinary care to keep the floors of their premises reasonably safe for the business invitees who must pass over them. (*Tuttle* v. *Crawford*, 8 Cal.2d 126, 130 [63 P.2d 1128].) If a storekeeper has a floor waxed or polished it must be done in such a manner that it remains reasonably safe for his invitees. (*Nicola* v. *Pacific Gas & Elec. Co.*, 50 Cal.App.2d 612, 615 [123 P.2d 529]; *Lorenz* v. *Santa Monica etc. School Dist.*, 51 Cal.App.2d 393, 399 [124 P.2d 846].)

■ When an unsafe condition which causes injury to an invitee has been created by the owner of the property himself or by an employee within the scope of his employment, the invitee need not prove the owner's notice or knowledge of the dangerous condition; the knowledge is imputed to the owner. (*Hatfield* v. *Levy Brothers*, 18 Cal.2d 798, 806 [117 P.2d 841].) In *Sharpless* v. *Pantages*, 178 Cal. 122 [172 P. 384], the evidence showed that plaintiff slipped because of the loose

condition of a strip of carpet on which she stepped. A motion for nonsuit was denied. The Supreme Court said (p. 124): "It being the duty of the defendant to use ordinary care to maintain the carpet upon the steps in such condition that it would be safe for persons to pass thereon in an ordinary manner, the fact that the plaintiff's foot slipped as she stepped upon the carpet is some evidence tending to show that defendant had failed to do so, and it is sufficient to sustain the decision upon the motion for a nonsuit." We hold that here also there is sufficient evidence tending to show that the floor had been waxed in a manner not reasonably safe for defendant's invitees, that plaintiff fell because of said unsafe condition and that defendant was responsible for it.

Respondent relies mainly on *McKellar* v. *Pendergast,* 68 Cal.App.2d 485 [156 P.2d 950], and *Owen* v. *Beauchamp,* 66 Cal.App.2d 750 [152 P.2d 756], for the contention that the evidence was insufficient as a matter of law. The McKellar case is not in point. The plaintiff slipped on some spots of oily substance on the lobby floor of an apartment house; she contended they were garbage drippings, negligently dropped by the janitor, but there was no evidence identifying the substance as garbage drippings; the District Court held that any other person could have left the drops of unknown oily substance as well as the janitor. The Owen case is nearer to the one before us. There the plaintiff slipped in a dentist's office on some dental wax of the same kind as used by the defendant dentist. The District Court affirmed a judgment on a directed verdict for defendant saying that the wax could have been imported by another invitee or by an employee of respondent one minute before plaintiff fell, without the knowledge of defendant. It may be doubted whether the fact that the material on which plaintiff slipped was identified as dental wax as used by defendant did not reasonably and fairly permit an inference of probability that the wax was dropped by defendant or by an employee within the scope of his employment. (There was a dissent in the District Court and two justices voted for hearing in the Supreme Court.) However even if the decision were correct, each case of this kind must be judged on its own facts (*Ahern* v. *S. H. Kress & Co.,* 97 Cal.App.2d 691, 698 [218 P.2d 108]) and the probabilities as to dental wax dropped in a dental office need not be the same as those with respect to excess floor wax found applied to part of the floor of a store. As said before, the evidence in this case can be held to show the probability that the wax on

which plaintiff slipped was left by a janitor for whose acts defendant is responsible.

Judgment reversed.

Dooling, J., concurred.

A petition for a rehearing was denied September 3, 1953, and respondent's petition for a hearing by the Supreme Court was denied October 1, 1953.