[No. 27695. Department Two. January 13, 1940.]

THE STATE OF WASHINGTON, *on the Relation of Sam Macri, Appellant,* v. THE CITY OF BREMERTON *et al., Respondents.*[1]

[1]Reported in 97 P. (2d) 1066.

*Tom W. Holman* and *Harold A. Pebbles,* for appellant.

*Marion Garland* and *J. W. Bryan, Jr.,* for respondents.

STEINERT, J.—Relator sought, by this proceeding, to have certain municipal officers adjudged in contempt of court for failure to comply with the terms of a decree directing them to accept, certify, and pay for certain public construction work performed by relator. Upon a hearing by the court, without a jury, judgment was entered for relator in a sum less than the amount demanded, and the municipal officers were exonerated from contempt. The relator, having appealed, will hereinafter be referred to as appellant.

On August 14, 1937, appellant and the city of Bremerton, which will be referred to herein as though it were

the sole respondent, entered into a written contract for the construction by appellant of a city sewer system. The contract contained a provision, the material part of which reads as follows:

"The contractor [appellant] agrees to indemnify and hold harmless the City from any and all claims for damages of every nature and description arising from or through the operation of the Contractor or those in his employ, including all subcontractors. This shall cover all claims . . . for injury or damages to the property or right of any person. . . .

"In the event of the failure of the Contractor to secure a valid release of any and all such claims *before* the final acceptance of the work, then the City be and it is hereby empowered to settle or compromise such claims *as best it can and charge the cost thereof to the Contractor as so paid on the contract;* . . ." (Italics ours.)

Appellant also procured and delivered to respondent a surety bond and policies of liability and property damage insurance.

During the progress of the work, and about four months before its completion, one Walter R. Warren filed with the respondent city a claim for damages in the sum of $4,500 for alleged removal of lateral support to his land through appellant's operations. Without notifying appellant of the claim, respondent rejected it. Two months later, Warren brought suit upon the claim, naming, as defendants in the action, respondent, appellant, and the latter's surety, and asked for judgment against all of them. Appellant duly appeared by motion and demurrer. Respondent, though regularly served with process, did not appear, but, according to the statement of the court as dictated into the record, "the city attorney knew the suit was brought and wilfully refrained from defending." Without joining final issue with appellant, Warren procured the entry of default against respondent, and subsequently, on May

3, 1938, the court made findings as to the extent of damage to Warren's land and entered judgment against respondent alone in the sum of $1,200; the judgment, however, was taken without the knowledge of appellant. Thereafter, Warren, in compliance with the procedure required by Rem. Rev. Stat., § 953 [P. C. § 8396], satisfied the judgment of record and demanded a warrant from respondent in payment thereof; these steps were likewise taken without the knowledge of appellant.

A month later, on June 16, 1938, the city attorney wrote to appellant notifying him that the default judgment had been taken against the respondent city, but saying nothing about the record satisfaction of the judgment. The letter concluded as follows:

"Demand is hereby made that you make settlement of this claim or take care of the same as provided in the agreement and bond, or the City of Bremerton will pay this judgment and charge it up to the amount now in its possession as above set forth.

"Of course, if you desire that I go into court and render you any assistance I may be able to do either toward getting this judgment set aside or in any other manner, I shall be glad to do so. Kindly let me hear from you soon relative to the above matter."

Appellant, through his counsel, promptly replied to the city attorney's letter and, in response to the two paragraphs quoted above, stated emphatically that respondent's position was without justification and that whatever was done in furtherance thereof would be respondent's own responsibility and would meet with appellant's disavowal.

A week later, on June 22, 1938, Warren instituted proceedings against the city of Bremerton to compel the issuance to him of a warrant in payment of his judgment. Upon the hearing of that cause, at which the city attorney was present, a decree was entered in

conformity with the petitioner's demand. Appellant, however, had no notice of that proceeding.

On August 25, 1938, appellant and his surety, having become aware of the situation just related, and after serving notice upon Warren, procured two orders in the Warren suit dismissing the action against them "with prejudice and without costs."

Appellant then, on August 29, 1938, instituted this proceeding in mandamus to compel respondent city and its officers forthwith to accept full performance of the work under the contract, to certify such acceptance, and to issue to appellant a city warrant in the sum of $6,064.67 in full payment of the work. Respondent appeared in answer to the application for writ of mandate and set up, as a partial defense, its payment of the judgment in the Warren damage action.

A hearing was had, and after its conclusion the court entered a decree (1) granting appellant's application for peremptory writ of mandate; (2) establishing May 6, 1938, as the day on which the work was completed by appellant and should have been accepted by respondent; (3) directing respondent and its officers forthwith to accept, and certify as fully performed, the work designated in the construction contract; (4) granting appellant judgment against respondent in the sum of $6,058.10 with interest at six per cent per annum from June 7, 1938, but (5) providing

"That upon the expiration of thirty (30) days from and after the date of mandate, there shall be paid to the relator [appellant], the total amount of the retained percentage in the sum of $6058.10 *less any claims filed as provided for by law.*" (Italics ours.)

Respondent took no appeal from that decree; nor did it formally accept appellant's work or pay him the amount of the retained percentage as fixed by the de-

cree. Instead, it submitted to appellant, and insisted upon his acceptance of, two claims designated "purchase requisitions," the effect of which was to deduct from the retained percentage amounts representing the Warren judgment and also two other damage claims which were subsequently disallowed and are not material here.

Appellant thereupon instituted the contempt proceeding which is now before us, to compel obedience to the decree and peremptory writ of mandate. In response to the order to show cause, respondent again set up as a defense its payment of the judgment in the Warren action. In reply, appellant pleaded at great length the matters and details which we have hereinabove related. After the issues had been settled, a trial was had, and, subsequently, the court entered the judgment from which this appeal was taken.

Appellant's contentions, aside from questions affecting the admissibility of certain evidence proffered by him and the allowance of attorney's fees, are (1) that the default judgment in the Warren damage action was void and unenforceable because there was no showing in that action that (a) the appellant contractor also had defaulted or (b) that the appellant, after having his day in court, had been adjudged negligent; (2) that respondent was barred from asserting as an offset its payment of the default judgment because, by the terms of the contract, appellant had the exclusive right to adjust and settle all claims arising from or through his operations under the contract; and (3) that appellant's ultimate rights were settled by the decree in the mandamus action wherein he was granted judgment for the full amount owing him under the contract.

Respondent's contentions are (1) that, since appellant had covenanted in the construction contract to

hold respondent harmless from any loss, a judgment by default against respondent in the Warren action was sufficient to warrant recovery by way of setoff against appellant's judgment in this action, even if appellant had not been notified at all of the pendency of the Warren action; (2) that, as a matter of fact, appellant had actual notice not only of the pendency of that action but also of the default judgment obtained therein, and that, despite such knowledge, he had deliberately refrained from taking any steps to have the default judgment set aside; (3) that appellant's contentions constitute a collateral attack upon the Warren judgment; and (4) that respondent's right to deduct the amount of valid claims was preserved by the decree in the mandamus action.

These various contentions are argued at great length by counsel, and many authorities are cited by them in support of their respective positions. We agree with many of the propositions advanced when considered in the abstract, but we do not consider them opportune or relevant to the situation presented by this case.

The fundamental controversy between the parties throughout the various stages of this action has always been whether or not the claim originally asserted by Warren was one for which appellant was legally liable and, if so, to what extent.

If the damage to Warren's land was caused by appellant's negligence in the performance of the work, then, undoubtedly, appellant would not only be liable to Warren but would also be held under its contract of indemnity to respondent. If the damage resulted, not from appellant's negligence, but solely because he performed the work in accordance with the city's own plans and specifications, there might be some question as to whether or not he would be liable, under his

contract, to indemnify. Upon that question, we do not now express any opinion.

In any event, however, appellant's covenant to indemnify and hold harmless the city against any and all claims for damages must be construed to have reference to damages arising from legal liability, and in so far as the city acted as a mere volunteer in paying Warren, it may not look to appellant for indemnity. *Oregon-Washington R. & N. Co. v. Washington Tire & Rubber Co.*, 126 Wash. 565, 219 Pac. 9.

The ultimate question of appellant's legal liability on the Warren claim has never been determined in any proceeding wherein the two parties now concerned have both had the opportunity to be heard. On the contrary, both parties meticulously avoid that question here, each contending that the loss represented by the Warren judgment must fall upon the other as the result of his, or its, own procedural maneuvers. We agree with both parties to the extent, at least, of saying that, if we should determine the case upon their present contentions, the result would rest wholly upon considerations of technical procedure.

The record reveals a willingness, amounting almost to an attempt, on the part of respondent to obtain, or assist in obtaining, for Warren a judgment which ultimately would have to be paid by appellant without his ever having had an opportunity to question its merit or validity. On the other hand, it appears that appellant, conceiving that the city had jeopardized its position, was quick to take advantage of the opportunity of having Warren's action against him and his sureties dismissed with prejudice, thus foreclosing any further consideration of his, or their, liability thereon.

Although Warren himself is no longer waging his claim, the controversy respecting it still exists as between appellant and respondent. It is now the basis

of respondent's claim to a right of setoff against the amount owing on the contract. Consequently, it is the duty and burden of respondent to establish, as against appellant, the validity of the claim and the amount of the damage sustained by Warren as the result of appellant's acts. Conversely, the decree in the mandamus proceeding is not to be construed as awarding appellant judgment for the full amount of the retained percentage regardless of meritorious claims, but rather that he is to be paid the balance of the retained percentage less any claims properly deductible.

It is our conclusion that the principal question that should have been presented and decided in the court below is whether, or to what extent, there were any valid claims which should be deducted from the amount of the retained percentage. All other matters urged upon the appeal are related to that question and therefore will be reserved for further consideration by the trial court.

Reversed and remanded, with direction to the court to proceed in accordance with the views herein expressed.

BLAKE, C. J., BEALS, GERAGHTY, and JEFFERS, JJ., concur.