[No. 1164-2.  Division Two.  September 28, 1973.]

JACK K. PROCIW, *Plaintiff*, v. BAUGH CONSTRUCTION CO., INC., *Respondent*, TRI-M ERECTORS, INC., *Appellant.*

*Robert W. Thomas* (of *Lane, Powell, Moss & Miller*), for appellant.

*Michael Mines* (of *Hullin, Roberts, Mines, Fite & Riveland*), for respondent.

PEARSON, C.J.—This appeal requires a consideration of the rights and obligations of a general contractor and his subcontractor under a reciprocal indemnity provision of their construction contract.

Baugh Construction Company, the general contractor,

was sued by Jack K. Prociw, an employee of Tri-M Erectors, Inc., the subcontractor. Prociw's complaint alleged that he received personal injuries on October 25, 1967 as a result of a fall from a scaffold while engaged in the work under the subcontract.[1] The cause of his fall was alleged to be the negligence of Baugh in failing to provide him with a safe scaffolding on which to do the work.

Baugh denied negligence, pleaded contributory negligence and assumption of risk as affirmative defenses. Baugh also commenced a third-party action against Tri-M. The third-party complaint alleged the indemnity provision of the subcontract and that Tri-M had wrongfully refused to accept a tender of the defense of Prociw's action. Baugh prayed for recovery over against Tri-M for any judgment Prociw should receive against Baugh "together with a reasonable attorney's fee incurred in the defense of this action." Tri-M's answer denied the claim of indemnity.

Procedurally, this matter is before us as an appeal from an order granting summary judgment to Baugh on its third-party complaint. That order, entered on September 21, 1971, provided:

1. Baugh Construction is hereby entitled to be indemnified from Tri-M Erectors and in the event the plaintiff [Prociw] obtains judgment against Baugh Construction in this action, it is entitled to a judgment in like amount against Tri-M Erectors, together with a reasonable attorney's fee incurred by Baugh Construction in the defense of this action; and

2. Baugh Construction is hereby granted a judgment for its costs and disbursements, together with attorney's fees incurred in the defense of the action, but not with respect to attorney's fees incurred in establishing the right to indemnity.

Subsequent to the entry of that order (September 30, 1971), Tri-M accepted defense of the action and its attor-

---

[1]The contract was executed on July 6, 1967. We need not, therefore, consider the constitutionality or effect of RCW 4.24.115, which was not effective until July 30, 1967. *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.,* 1 Wn. App. 1035, 467 P.2d 386 (1970).

neys were substituted for those who had been representing Baugh. The notice of substitution made no reference to the summary judgment order nor to a potential appeal from that order. Likewise, no provision was made for Baugh's former counsel to receive any notices of subsequent proceedings in the personal injury action.

Baugh's new attorneys carried on with the defense thereafter and ultimately negotiated an out-of-court settlement for $12,000. Tri-M paid the settlement, obtained a release in favor of Baugh, and on April 4, 1972 caused an order of dismissal of Prociw's action to be entered. On April 11, 1972 this appeal was taken from the order of September 21, 1971, granting summary judgment on Baugh's third-party complaint. For the reasons stated hereafter, we think this order was partially in error.

The reciprocal indemnity provision is very broad:

> The CONTRACTOR and SUBCONTRACTOR agree to indemnify and save harmless each other from and against any and all suits, claims, actions, losses, costs, penalties and damages of whatsoever kind or nature, including attorney's fees, arising out of, in connection with, or incident to, each party's performance of his particular portion of this contract.

The affidavits supporting Baugh's motion for summary judgment established that Prociw was engaged in the work of the subcontract at the time of his injuries and that the indemnity provision was in effect at the time of the accident. These facts were not disputed. Consequently, Baugh did establish a right of indemnity under that provision. *See Tucci & Sons, Inc. v. Carl T. Madsen, Inc.*, 1 Wn. App. 1035, 467 P.2d 386 (1970).

However, Tri-M's affidavits, also undisputed, established (1) that Prociw fell from a scaffolding device provided and installed by Baugh pursuant to agreement with Tri-M; (2) that such procedure and agreement was a customary procedure of the construction industry; (3) that the scaffolding provided in this case was not equipped with a safety rail as required by custom and by the state of Washington's

safety standards for construction work; and (4) that the presence of a safety rail would have prevented plaintiff's fall.

Assuming these facts to be true, as we must when they are not factually disputed (*see* CR 56(c)), it is evident that Prociw's suit also "aris[es] out of," is "in connection with" or "incident to" Baugh's performance of its particular part of the contract. We thus have a set of circumstances in which, arguably at least, each party has agreed to indemnify the other.

Tri-M contends on the one hand that there would not have been a claim against Tri-M but for Baugh's performance of its part of the contract. Since *causation* of the claim is the touchstone of liability to indemnify, the indemnity provision protects Tri-M completely. *Continental Cas. Co. v. Municipality of Metropolitan Seattle*, 66 Wn.2d 831, 405 P.2d 581 (1965). Tri-M alternatively asserts that if both have agreed to indemnify each other we should treat the indemnity provision as a nullity.

On the other hand, Baugh contends and the trial court agreed that the important question is "which party is actively performing the contract at the time the injury occurred?" Since the claim occurred while Tri-M was performing its obligations under the contract, Tri-M must indemnify Baugh for the entire loss.

It seems to us that both of these views ignore the *broad* but *plain* and *clear* terms of the indemnity agreement. *See Tucci & Sons, Inc. v. Carl T. Madsen, Inc., supra.*

Tri-M's contention would require us to ignore the established fact that Prociw's injury "arose out of its [TRI-M's] performance of its particular part of the contract." Baugh's contention would require us to ignore the established fact that Prociw's injury was "incident to its [Baugh's] performance of its particular part of the contract." Additionally, Baugh's theory would require that we add the word "active" as an adjective modifying "performance."

No good reason has been offered as to why the plain meaning of the indemnity provision should be disregarded

and we see none. There is no ambiguity in the provision. Only the application to these particular circumstances is questionable.

■ Indemnity agreements should neither be narrowly construed so as to frustrate their obvious design nor loosely construed so as to relieve a party from liability within the obvious purpose of the agreement. Such agreements must receive a reasonable interpretation which will carry out rather than defeat their intended purpose. *Continental Cas. Co. v. Municipality of Metropolitan Seattle, supra.*

■ The purpose of this agreement is to achieve reciprocal allocation of risks of loss which might occur while the contract is being performed. *See Continental Cas. Co. v. Municipality of Metropolitan Seattle, supra.* It is not apparent to us why the provision should be treated as a nullity solely because a set of circumstances arises which require each party to indemnify the other.

The purpose of allocating potential risks of loss is achieved in these circumstances only by giving effect to the reciprocal obligations. This can be accomplished by requiring each party to assume an equal share of the loss.

Such is the result where separate indemnitors of a common obligation have agreed to indemnify a third person and where no provision for apportionment appears in the contractual obligations. *Karnatz v. Murphy Pac. Corp.,* 8 Wn. App. 76, 503 P.2d 1145 (1972).

It seems to us that the rationale of that rule is particularly persuasive to a reciprocal indemnity situation where the doctrine of contribution would achieve eminent fairness and accomplish the intended allocation of the risk. Consequently, we hold that on the undisputed facts before the court on the motion for summary judgment, both parties established a right of indemnity against the other for the claim being asserted by Prociw and that liability for such claim must be equally shared.

Baugh contends, however, that even though the summary judgment order might be in error, it should be upheld because (1) the appeal is untimely under CAROA 33, and

(2) the conduct of Tri-M in accepting defense of the action and in negotiating a settlement of the action without notice to Baugh's former counsel, constituted a waiver of its right to appeal.

■ Baugh contends that an appeal should have been filed within 30 days of September 21, 1971, the date on which the order granting summary judgment was entered. Tri-M contends that the order now appealed from was not, in fact, appealable under CR 54(b), since the order failed to contain an express determination that it constituted a final judgment. We agree with Tri-M's position.

Whatever doubt may have existed concerning the proper interpretation of Rule 54(b) has now been laid to rest by *Schiffman v. Hanson Excavating Co.*, 82 Wn.2d 681, 513 P.2d 29 (1973). Under the interpretation of CR 54(b) given by the Supreme Court in *Schiffman v. Hanson Excavating Co., supra*, the order granting summary judgment to Baugh on its third-party complaint was not a final judgment and hence not appealable.

On the question of waiver, we are loathe to hold that a party who complies with the declarations of an incorrect interlocutory and nonappealable order of the trial court waives the right to appeal from such order after it does become final. Such a result would be manifestly unfair. It would mean that the only effective way to preserve an appeal from an interlocutory order would be to disobey the order.

It is true as Baugh contends that the summary judgment did not direct Tri-M to assume defense of the action. Instead, it declared Tri-M's liability for the cost of Baugh's defense, including attorney's fees, as well as its liability for any judgment rendered against Baugh.

■ However, under Washington law, waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. *Bowman v. Webster*, 44 Wn.2d 667, 269 P.2d 960 (1954); *Lande v. South Kitsap School Dist. 402*, 2 Wn. App. 468, 469 P.2d 982 (1970).

■ Acceptance of Baugh's defense by Tri-M is not "voluntary" where done under the compulsion of a judicial order—whether the order is directive or declaratory in nature. Furthermore, where the right is allegedly waived as the result of an erroneous judicial declaration, it can hardly be contended that the right waived is a "known" right. We conclude that Tri-M's compliance with the trial court's interlocutory order does not operate as an implied waiver of its right to appeal from the order.

Finally, for the purpose of the remand which our analysis requires, we turn to the question of what effect the out-of-court settlement has upon the established reciprocal rights of indemnity. This question also depends upon an interpretation of the indemnity provision. *See Northern Pac. Ry. v. National Cylinder Gas Div.*, 2 Wn. App. 338, 467 P.2d 884 (1970). We note, as did the court in that case, that the indemnity provision in question does not depend for its operative effect upon a determination of Baugh's legal liability to Prociw. *See Oregon-Washington R.R. & Navigation Co. v. Washington Tire & Rubber Co.*, 126 Wash. 565, 219 P. 9 (1923); and *Nelson v. Sponberg*, 51 Wn.2d 371, 318 P.2d 951 (1957). Rather, the indemnity provision depends upon causation for its operative effect and when, as here, the claim arose out of, in connection with, or incident to the performance of both parties, then both jointly were obliged to defend, and if necessary, share in any ultimate loss.

Here both parties' actions were guided by an erroneous order. Baugh, in effect, lost joint control over the litigation, at least to the extent that settlement was controlled by Tri-M. Tri-M was compelled to undertake the expense of defense alone. Both parties should have been involved in the conduct of the defense, the negotiations and the settlement.

Under these circumstances, we think the only questions to be determined on remand are: (1) Was the settlement reasonable under all the circumstances of the case? (2) Was it made in good faith? (3) Were the attorney's fees and costs incurred reasonable? *See Northern Pac. Ry. v.*

*National Cylinder Gas Div., supra.* Tri-M should carry the burden of proof on these issues.[2]

Upon a determination of those issues, the trial court should require each party to assume an equal share of any reasonable settlement of the claim made by Tri-M in good faith, and also to share equally in all reasonable attorney's fees and costs expended by both parties in defense of the action, through and including the costs and attorney's fees incurred on appeal.

Affirmed in part, reversed in part, and remanded with instructions.

PETRIE and ARMSTRONG, JJ., concur.

---

[2]We are mindful that the counsel hired by Tri-M to defend Baugh owed undivided loyalty to Baugh in conduct of the defense of the action and in the settlement. We have no reason to believe that Baugh did not receive that loyalty nor that the settlement was unreasonable. However, because of the potential conflict of interest which arose at the time the settlement was negotiated, Tri-M must carry the burden of proof as to the bona fides and reasonableness of the settlement.